[Crim. No. 581. Third Appellate District.—December 23, 1921.]

THE PEOPLE, Respondent, v. P. J. BALLAS, Appellant.

[1] CRIMINAL LAW—RAISING OF CHECK—PLACE OF COMMISSION OF CRIME.—Where a raised check was drawn on a bank in Yolo County and presented to a bank in Contra Costa County with other checks and money to be credited to the defendant's checking account, and the latter bank made the credit and mailed the check to its correspondent in San Francisco, and in due course the check was presented to the bank in Yolo County and paid,

and the amount thereof charged to the account of the drawer, the crime was committed in Contra Costa County, and the superior court of Yolo County was without jurisdiction of the offense.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. A. Anderson, Judge. Reversed.

The facts are stated in the opinion of the court.

Alfred S. Ormsby, E. B. Taylor, A. G. Bailey and E. E. Gehring for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted in the superior court of Yolo County of the crime of forgery and prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

The principal ground relied on for a reversal is that the crime, if any, was committed in Contra Costa County, and that, therefore, the superior court of Yolo County was without jurisdiction. The defendant was charged with uttering a check which had been raised from sixty-five cents to sixty-five dollars. The question for determination is whether the check was uttered in Yolo County.

The check was drawn on the First National Bank of Woodland, Yolo County, by Jessa Dunsmore. The defendant presented the raised check to the Bank of Martinez in Contra Costa County and that bank credited the amount thereof to the defendant's deposit account and mailed the instrument to its correspondent in San Francisco. In due course the check was presented to the First National Bank of Woodland and paid, the amount thereof being charged to the account of the drawer. There was no understanding between· the defendant and the Bank of Martinez that the latter was to take the check for collection merely, but it was presented with other checks and money to be credited to the defendant's checking account. The transaction did not create the relation of principal and agent between the defendant and the Bank of Martinez, but that of creditor and debtor. (*Plumas County Bank* v. *Bank of Rideout,*

*etc.,* 165 Cal. 133 [47 L. R. A. (N. S.) 552, 131 Pac. 360];
*Newark G. Co.* v. *Merchants' Nat. Bank,* 166 Cal. 208 [135
Pac. 958]; *Gonyer* v. *Williams,* 168 Cal. 452, 454 [143 Pac.
736]; *Cabrera* v. *Thannhauser & Co.,* 183 Cal. 607 [192 Pac.
45].)

Conceding that the acts of the defendant constituted the
crime of uttering the raised check in Contra Costa County,
respondent contends that "the crime may nevertheless be
continued and be committed in any jurisdiction to which
its effect extends." In the case of *In re Carr and Dillon,*
28 Kan. 1, Dillon presented forged time-checks, which were
made payable by the Atchison, Topeka & Santa Fe Rail-
road at its office in Topeka, Kansas, to a bank in Kansas
City, Missouri, and was there paid the amount of the
checks. The bank forwarded the checks to the company at
Topeka where they were paid. The court said: "Dillon was
certainly guilty of the offense with which he is charged in
Missouri; but can it be said he was guilty of a like offense
each time the checks were transferred to a new holder?
We think not. . . . We fully recognize that the power of the
state to punish criminals extends to all persons who, being
without the state, commit or consummate violations of the
penal statutes within our state, 'by an agent or means with-
in the state.' Such persons, although out of the state, are,
in contemplation of law, within the state. But where a
forgery is perpetrated and uttered beyond the state, and the
forger actually obtains the money thereon in another state,
and before the false and spurious instrument reaches the
limits of the state, the offense is consummated beyond this
state, and the forger is not amenable to the provisions of
our statute upon coming within the state." (See, also,
*Regina* v. *Garrett,* 22 Eng. L. & Eq. Rep. 607; *Thulemeyer*
v. *State,* 34 Tex. Cr. 619 [31 S. W. 659]; *Salas* v. *United
States,* 234 Fed. 846 [148 C. C. A. 440]; *Burton* v. *United
States,* 196 U. S. 283 [49 L. Ed. 482, 25 Sup. Ct. Rep. 243,
see, also, Rose's U. S. Notes]; *State* v. *Pray,* 30 Nev. 206
[94 Pac. 218].)

[1] Respondent relies upon the provisions of section
781 of the Penal Code, which reads: "When a public offense
is committed in part in one county and in part in another,
or the acts or effects thereof constituting or requisite to the
consummation of the offense occur in two or more counties,

the jurisdiction is in either county." The crime of uttering the raised check was complete when it was presented to the bank in Contra Costa County. No subsequent acts by any person were ingredients of that crime, but, if criminal, were separate and distinct crimes. They were not "acts or effects constituting or requisite to the consummation of the offense." (See *State* v. *Pray, supra.*) From the foregoing authorities it seems clear that the superior court of Yolo County was without jurisdiction.

Appellant urges that the judgment ought to be reversed on the ground of misconduct of the district attorney in his closing argument to the jury. The defendant is a native of Greece and the district attorney said to the jury: "These Greeks, why will they do these things—why will they come into this country and in a little while own acres and acres of land and have lots of money and steal tobacco and sheep, and sell booze all over the country, blind-pigging and bootlegging, and if they are caught, come into court and say, why I didn't have to do it, I had money—why will they come in our cities here and in a couple of years get independently rich and wealthy off the earnings and profits of fallen women. I don't know why they do it unless it is their greed for money." Counsel for defendant here interrupted the district attorney and said: "I cite that as prejudicial error and misconduct on the part of the district attorney, as it is not an issue in this case." The court said: "Proceed." Respondent does not attempt to justify the conduct of the district attorney, but contends that the appellant is not in a position to complain because no request was made of the court to instruct the jury to disregard the remarks. That the remarks of the district attorney constituted gross misconduct does not admit of doubt, but by reason of the conclusion reached on the question of jurisdiction it is unnecessary to decide whether the appellant is entitled to a reversal on that ground.

The judgment and order appealed from are reversed.

Hart, J., and Burnett, J., concurred.